17-227-cv
*VIZIO, Inc. v. Klee*

# In the

# United States Court of Appeals

## For the Second Circuit

_____

AUGUST TERM 2017

No. 17-227-cv

VIZIO, INC.,
*Plaintiff-Appellant,*

*v.*

ROBERT KLEE, in his official capacity as the Commissioner of the State of Connecticut Department of Energy and Environmental Protection,
*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the District of Connecticut.
No. 1:15-cv-00929 — Victor A. Bolden, *Judge.*

_____

ARGUED: DECEMBER 7, 2017

DECIDED: MARCH 29, 2018

_____

Before: CABRANES AND LIVINGSTON, *Circuit Judges*, GOLDBERG, *Judge.*[*]

_____

_____

[*] Judge Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

Plaintiff-Appellant VIZIO, Inc. filed a complaint against Defendant-Appellee Robert Klee, in his capacity as the Commissioner of the State of Connecticut Department of Energy and Environmental Protection, asserting that a Connecticut law imposing recycling fees on electronics manufacturers violates the United States Constitution. The United States District Court for the District of Connecticut (Victor A. Bolden, *Judge*) granted Defendant-Appellee's Rule 12(b)(6) motion to dismiss for failure to state a claim. On appeal, VIZIO advances only its argument that the Connecticut law is unconstitutional under the Commerce Clause.

We hold that VIZIO has failed to state a claim upon which relief can be granted, and we therefore **AFFIRM** the December 29, 2016 judgment of the District Court.

_____

PRATIK A. SHAH (James E. Tysse, Z. W. Julius Chen, and Martine E. Cicconi, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, Washington, DC, *for Plaintiff-Appellant.*

MICHAEL K. SKOLD, Assistant Attorney General, *for* George Jepsen, Attorney General, Office of the Attorney General, Hartford, CT, *for Defendant-Appellee.*

_____

RICHARD W. GOLDBERG, *Judge*:

Plaintiff-Appellant VIZIO, Inc. is a manufacturer of televisions sold nationwide, including in Connecticut. VIZIO challenges Connecticut's statute and regulations creating and implementing its

electronic recycling program, Conn. Gen. Stat. §§ 22a-629 *et seq.*; Conn. Agencies Regs. §§ 22a-630(d)-1, 22a-638-1 (collectively "Connecticut's E-Waste Law"), on the grounds that they effectively regulate interstate commerce in violation of the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3.

Such a dormant Commerce Clause claim is analyzed through a "well-worn path," *see N.Y. Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 89 (2d Cir. 2017), and because VIZIO has failed to articulate entitlement to relief under this familiar rubric, its claim must be dismissed.

**BACKGROUND**

On June 17, 2015, VIZIO initiated a lawsuit seeking to enjoin Connecticut from enforcing its e-waste law. On appeal, we review the constitutionality of that law under the Commerce Clause of the U.S. Constitution, art. I, § 8, cl. 3.

I.      Connecticut's E-Waste Law

In July 2007, the Connecticut legislature passed "An Act Concerning the Collection and Recycling of Covered Electronic Devices," Public Act No. 07-189, codified at Conn. Gen. Stat. §§ 22a-629 *et seq.* The statute created a program under which certain manufacturers conducting business in the state would be required to register with Connecticut's Department of Energy and Environmental Protection ("DEEP") and pay a fee associated with the cost of recycling the products they manufacture. In general, the law was designed so that "each manufacturer [would] participate in the state-wide electronics recycling program . . . to implement and finance the collection, transportation and recycling of covered electronic devices . . . ." Conn. Gen. Stat. § 22a-631(a). As a manufacturer of "non-[cathode ray tube]-based televisions," Conn. Gen. Stat.

§ 22a-629(5), for sale in Connecticut, Conn. Gen. Stat. § 22a-629(7), VIZIO must contribute to the state's television recycling program. *See* Conn. Gen. Stat. § 22a-631(a). VIZIO does not dispute that it is a covered manufacturer under the law, nor does it contest Connecticut's power to compel VIZIO to pay into the recycling program. VIZIO does, however, challenge the means by which Connecticut calculates its recycling fee.

The recycling program is operated by "covered electronic recyclers" ("CERs"), private entities who register with the state. *See* Conn. Gen. Stat. § 22a-629(6); *see also* Conn. Agencies Regs. § 22a-638-1(b). Those CERs collect all "covered electronic devices" for recycling and dispose of them. *See generally* Conn. Gen. Stat. § 22a-631. The manufacturers, in turn, pay their assigned fees directly to the CERs. Conn. Agencies Regs. § 22a-638-1(j).

The Connecticut legislature charged DEEP with enacting regulations "to establish annual registration and reasonable fees for administering the [recycling] program . . . ." Conn. Gen. Stat. § 22a-630(d). The law mandated that those fees would be "representative of the manufacturer's market share," calculated "based on available *national* market share data." Conn. Gen. Stat. § 22a-630(d) (emphasis added). DEEP's regulations, which took effect in June 2010, determine each manufacturers' market share based on:

> [I]nformation that approximates the total number of units sold by all manufacturers for the previous year and approximates the number of units sold that are attributable to each manufacturer. This determination shall be based upon nationally available market share data, including, but not limited to, the number of units shipped, retail sales data, consumer surveys, information

provided by the manufacturers, or other nationally available market share data.

Conn. Agencies Regs. § 22a-638-1(g)(2). It is this national market share approach that VIZIO claims to be violative of the dormant Commerce Clause.

In its first amended complaint, VIZIO alleged that "the practical effect of the E-Waste Law is to directly regulate VIZIO's out-of-state sales and to control VIZIO's conduct outside of the state's boundaries." In short, VIZIO maintains that Connecticut's national market share approach unduly regulates interstate commerce by tying in-state fees to out-of-state transactions and by double charging those out-of-state sales.

VIZIO asserts a host of costs associated with Connecticut's E-Waste Law, each of which VIZIO contends influences its out-of-state pricing decisions by increasing the cost of doing business both in Connecticut and nationwide. The result, VIZIO argues, is a disproportionate share of the regulatory costs falling to producers like VIZIO who manufacture products that are sold in- and out-of-state. Additionally, VIZIO asserts that by considering a company's national sales, Connecticut double charges manufacturers for sales made outside the state. All of this, VIZIO claims, infringes on the interstate market for televisions "by reducing the narrow revenue margins that VIZIO can capitalize upon to price and compete."

According to VIZIO, the state's calculation of fees under Connecticut's E-Waste Law is problematic and VIZIO's specific circumstances highlight the law's burdensome effects. Because VIZIO's assigned national market share was higher than the company's actual share of the Connecticut market, VIZIO contends that the fees it paid were correspondingly disproportionate. Under the law, VIZIO claims to have been assessed market shares of 14.33%,

14.52%, and 16.088% in the years 2013 through 2015, respectively, and has spent over $2.5 million to comply with the law over those three years. These costs have accrued despite VIZIO's insistence that Connecticut's E-Waste Law principally funds the recycling of cathode ray tube televisions, a product VIZIO has never manufactured.

Thus, VIZIO asserts that it is required to pay an outsized recycling bill for televisions it did not produce, products which burden the recycling program exponentially more than its own. And, as a result, due to the law's reference to out-of-state sales, VIZIO maintains that it is assessed a fee not in proportion with its true share of the Connecticut market or the actual burdens VIZIO places on the recycling program.

II.     Lower Court Proceedings

On August 20, 2015, Connecticut moved to dismiss VIZIO's complaint, arguing that VIZIO had failed to state a claim upon which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court dismissed VIZIO's complaint in its entirety, including several counts unrelated to the Commerce Clause. *VIZIO, Inc. v. Klee*, No. 3:15-CV-00929, 2016 WL 1305116, at *28 (D. Conn. Mar. 31, 2016). Yet the court granted leave to amend to "add factual allegations from which the Court could reasonably infer that the National Market Share provision of the E-Waste Law has the practical effect of directly controlling the interstate prices of its televisions" so as to state a claim under the extraterritoriality theory of dormant Commerce Clause jurisprudence. *Id.* at *15.

VIZIO filed its amended complaint on May 20, 2016, supplementing its original pleadings with additional factual allegations in an attempt to satisfy the pleading requirements of Rule 12(b)(6). Connecticut subsequently filed another motion to dismiss and the court granted that motion in full, dismissing all of VIZIO's

remaining claims.  *VIZIO, Inc. v. Klee*, 226 F. Supp. 3d 88, 105 (D. Conn. 2016).

VIZIO timely appealed.  On appeal, VIZIO continues to advance its position that Connecticut's E-Waste Law violates the dormant Commerce Clause.  Specifically, VIZIO argues that the law directly controls interstate commerce in violation of the extraterritoriality principle, amounts to an impermissible user fee, and imposes impermissible burdens on interstate commerce in relation to local benefits.  Each of these arguments was properly preserved and is ripe for review by this panel.

## DISCUSSION

The Commerce Clause provides that Congress has the exclusive power "[t]o regulate Commerce . . . among the several States." U.S. CONST. art. I, § 8, cl. 3.  This provision has long been read to contain a negative corollary that "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 98 (1994).  At issue in this case is that principle, termed the "dormant Commerce Clause," and whether Connecticut has violated its dictates.

"Analysis of state and local laws under the dormant Commerce Clause treads a well-worn path. First, we determine whether the challenged law 'discriminates against interstate commerce,' or 'regulates evenhandedly with only incidental effects on interstate commerce.'" *N.Y. Pet Welfare Ass'n*, 850 F.3d at 89 (citation omitted). State laws may discriminate in several ways, including in their effect. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 48 (2d Cir. 2007).  However, if discrimination is not found and the law only imposes incidental burdens on interstate commerce, we analyze the

law under the standard set out in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

Here, VIZIO argues that Connecticut's E-Waste Law discriminates against interstate commerce because the effect of the law is to control prices beyond Connecticut's borders. VIZIO claims that by assessing a recycling fee calculated by reference to a manufacturer's national, rather than local, market share, Connecticut impermissibly regulates interstate commerce. In so arguing, VIZIO relies primarily on the principle that the "Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (first alteration in original) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982) (plurality opinion)). Alternatively, VIZIO contends that Connecticut's E-Waste Law is improper because it imposes an unconstitutional user fee, *see Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 711–12 (1972), and its negative impact on interstate commerce outweighs the benefits conferred on the local economy, *see Pike*, 397 U.S. at 142.

Yet VIZIO's claim must fail as it does not allege sufficient facts to give rise to an entitlement to relief under the dormant Commerce Clause. The thrust of VIZIO's argument is that Connecticut is prohibited from referencing national market share when it assesses recycling fees because doing so regulates—thereby placing a burden on—interstate commerce. However, such a principle has not before been acknowledged in our dormant Commerce Clause jurisprudence and we decline to extend that doctrine here.

Accordingly, we affirm the dismissal by the district court.

## I.      Standard of Review

We review *de novo* the district court's dismissal for failure to state a claim under Rule 12(b)(6).  *See Sherman v. Town of Chester*, 752 F.3d 554, 560 (2d Cir. 2014).  We regard as true all well-pleaded factual allegations, draw all reasonable inferences in VIZIO's favor, and assess the complaint to "determine whether [the allegations] plausibly give rise to an entitlement to relief." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Nevertheless, the burden remains with VIZIO to demonstrate that Connecticut's E-Waste Law imposes an impermissible burden on interstate commerce. *See USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1281 (2d Cir. 1995) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)).  Thus, our review here focuses on the dormant Commerce Clause and whether VIZIO's theory of unconstitutionality fits within its contours.

## II.      Extraterritorial Effect

Because VIZIO alleges that Connecticut's E-Waste Law merely influences national pricing decisions, rather than directly controls out-of-state commerce, its extraterritorial theory was properly dismissed.  A state law has unconstitutional extraterritorial effect if its "practical effect . . . is to control conduct beyond the boundaries of the State." *Healy*, 491 U.S. at 336 (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)).  When assessing a plaintiff's extraterritoriality theory, we focus squarely on whether the state law has "the practical effect of *requiring* out-of-state commerce to be conducted at the regulating state's direction." *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 193 (2d Cir. 2007) (emphasis added) (quoting *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 102 (2d Cir. 2003)); *see also Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1170 (10th Cir.) (Gorsuch, J.) (referring to the extraterritoriality principle as "the most

dormant doctrine in dormant commerce clause jurisprudence"). In that analysis, courts shall not only consider the effect of the challenged law, but also "what effect would arise if not one, but many or every State adopted similar legislation." *Healy*, 491 U.S. at 336.

The practical effect of Connecticut's E-Waste Law does not "inescapably require" out-of-state conformance with its dictates such that VIZIO cannot successfully argue that the law is unconstitutionally extraterritorial in its effect. *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 110 (2d Cir. 2001). The law does not "mak[e] specific reference to the terms of . . . pricing" and does not "attach[] in-state consequences where the pricing terms violate[] the statute[]." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 221 (2d Cir. 2004). Connecticut's E-Waste Law does nothing to *control* interstate commerce, but rather merely *considers* out-of-state activity in imposing in-state charges. Indeed, VIZIO is not compelled to conduct its business outside of Connecticut on the state's proscribed terms. Rather, VIZIO is free to arrange its business in one manner or another without consideration of out-of-state compliance with Connecticut's E-Waste Law.

VIZIO argues that the state's fee structure is pegged to VIZIO's national activities, which will inevitably affect its television prices outside Connecticut. VIZIO attempts to characterize this as control, arguing that Connecticut's E-Waste Law, "individually and collectively with other states' e-waste laws, is establishing a piecemeal pricing mechanism for interstate goods." But this practical effect amounts to no more than "upstream pricing impact" because the law does not go "a step further[ and] control[] in-state and out-of-state pricing . . . ." *Spitzer*, 357 F.3d at 221. As such, Connecticut's E-Waste Law is merely one of "innumerable valid state laws affect[ing] pricing decisions in other States." *Healy*, 491 U.S. at 345 (Scalia, J., concurring in part and concurring in the judgment) (cautioning against allowing

Commerce Clause jurisprudence to "degenerate into disputes over degree of economic effect."). VIZIO has not alleged that Connecticut reaches out and directs VIZIO's decision-making apparatus or that of any other interstate commercial participant.

In a final effort to articulate an entitlement to relief, VIZIO tries to tack onto its control argument the principles 1) that "a State may not tax value earned outside its borders," *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 777, 112 S. Ct. 2251, 119 L. Ed. 2d 533 (1992), and 2) that a state law may not "subject interstate commerce to the risk of a double tax burden to which intrastate commerce is not exposed," *Comptroller of the Treasury v. Wynne*, 135 S. Ct. 1787, 1795 (2015) (citation omitted). But the E-Waste Law does not impose a tax: it requires electronics producers to pay fees to CERs, private recycling facilities, "not to the government." *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324 (9th Cir. 2015) (en banc), *cert. denied*, 136 S. Ct. 795 (2016); *see also id.* (observing that "state-imposed taxes" are treated differently than statutes that "regulate[] conduct among private parties" under the dormant Commerce Clause). Moreover, neither principle is part of the extraterritoriality doctrine, and for good reason. As demonstrated above, Connecticut's imposition of a fee that accounts for national market share does not control interstate commerce. VIZIO's objection to the law is not that it taxes out-of-state income, *Allied-Signal*, 504 U.S. at 777–78, or that it discourages participation in the interstate market, *Wynne*, 135 S. Ct. at 1801–04. Rather, VIZIO's challenge remains directed at Connecticut's ability to use national market share as a proxy for measuring its in-state activity. This is not discriminatory, *see id.* at 1804–05, nor is it control,

*see Healy*, 491 U.S. at 336.[1]  Thus, VIZIO's attempt to refashion its control argument as one about double taxation is unavailing.

VIZIO also insists that our holding in *Grand River Enterprises Six Nations, Ltd. v. Pryor* compels us to allow VIZIO's suit to continue to the discovery stage of litigation.  *See* 425 F.3d 158, 173 (2d Cir. 2005). We disagree.  In *Grand River*, we allowed plaintiffs' extraterritoriality claim to proceed under a national market share theory.  *Id.*  Unlike the plaintiffs in *Grand River*, however, VIZIO has not made any of the allegations that we suggested in *Grand River* could give rise to a viable claim: "that the [E-Waste Law is] inconsistent with the legitimate regulatory regimes of other states, that the [E-Waste Law] force[s] out-of-state merchants to seek [Connecticut] regulatory approval before undertaking an out-of-state transaction, or that any sort of interstate regulatory gridlock would occur if many or every state adopted similar legislation."  *Id.* at 171 (quoting *Spitzer*, 357 F.3d at 221).[2]  The *Grand River* plaintiffs were successful precisely because they did so plead.  *See id.*  As a result, we are not bound by our previous holding in *Grand River* and decline to treat VIZIO in a similar fashion to those plaintiffs in that distinguishable case.[3]

---

[1] Indeed, state laws that could "result in the discriminatory double taxation of income earned out of state" are not unconstitutional if that risk of double taxation stems from "the interaction of two different but nondiscriminatory" tax systems.  *Wynne*, 135 S. Ct. at 1801–02.  VIZIO does not argue that the E-Waste Law is inherently discriminatory, just that it would result in double taxation if other states apportioned e-waste recycling fees based on in-state market share.

[2] VIZIO does, however, assert that Connecticut's E-Waste Law imposes "overlapping, inconsistent, and confusing obligations on VIZIO" which ultimately can lead to "additional cost[s]" in the form of "multiple e-waste fees for the same product or sale."  This alleged impact does not amount to "effectively regulating the pricing mechanism for goods in interstate commerce."  *Grand River*, 425 F.3d at 173 (internal quotation marks and brackets omitted) (quoting *Healy*, 491 U.S. at 340).

[3] Moreover, the *Grand River* court qualified its ruling by stating that it "[took] no position as to the ultimate viability of the dormant commerce clause claim," but chose to keep that claim alive so as to remain "consistent with the district court's decision to reinstate the Sherman Act claim . . . ."  *Grand River*, 425 F.3d at 173.  And the Second Circuit later held that the *Grand River* claim was not viable because the challengers had shown only that the regulations could affect nation-wide prices, which was legally insufficient.  *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 67 (2d Cir. 2010).  Yet that is all that VIZIO pleads here.

In sum, VIZIO has only argued that Connecticut's E-Waste Law merely affects pricing decisions, not that it "directly controls commerce occurring wholly outside the boundaries of a State . . . ." *Healy*, 491 U.S. at 336. More is required to make out an extraterritoriality claim. Because VIZIO's alleged "practical effect" is insufficient and it has failed to identify an alternative recognized basis under which its extraterritoriality claim can survive, we affirm the district court's dismissal of VIZIO's claim for relief under the theory of extraterritoriality.

III.    Unconstitutional User Fee

VIZIO's suggestion that we apply the Supreme Court's "user fee" analysis to these circumstances is also misguided. While the imposition of a user fee may indicate that a dormant Commerce Clause violation is afoot, *see Selevan*, 584 F.3d at 96–98, that analysis is inapplicable here. Because Connecticut does not charge a fee for the use of public property, VIZIO's proposed framework is inapposite and VIZIO's claim for relief thereunder was rightfully dismissed by the district court.

In *Evansville*, the Supreme Court announced a test in order to examine contested tolls imposed for the use of state roads. 405 U.S. at 716–17. That test deems permissible those user fees that are: 1) "based on some fair approximation of use," 2) "not excessive in relation to the benefits conferred," and 3) "not discriminat[ory] against interstate commerce." *Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994) (citing *Evansville*, 405 U.S. at 716–17). Importantly, the *Evansville* rubric applies "only to 'charge[s] imposed by the State for the use of *state-owned or state-provided* transportation or other facilities and services.'" *Or. Waste Sys.*, 511 U.S. at 103 n.6 (emphasis added) (quoting *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 621 (1981)).

Notwithstanding VIZIO's arguments to the contrary, Connecticut's E-Waste Law does not impose a user fee and, therefore, the *Evansville* framework is ill-suited to scrutinize the state's tax. Connecticut does not charge for the privilege of using public facilities but instead merely imposes a fee on VIZIO in order to finance an electronics recycling program. In fact, under Connecticut's E-Waste Law manufacturers pay the recycling fees directly to the CERs, privately owned facilities designated by the state as recyclers. *See* Conn. Agencies Regs. §§ 22a-638-1(b), (j). Those private CERs then do the work of actually recycling the goods. *See* Conn. Agencies Regs. § 22a-638-1(c). The state's role lies only in the program's creation, maintenance, and in assigning manufacturers a rate. As such, Connecticut cannot be said, in this context, to run a "state-owned or state-provided" program and we decline to analyze the reasonableness of the fees using the *Evansville* test.

VIZIO encourages this court to view the *Oregon Waste Systems* holding as *dicta*. Essentially, VIZIO claims that because the overall disposition of that case did not rely upon the reasoning provided in footnote 6, we can treat it as persuasive rather than binding. We decline to do so for two reasons. First, the questioned holding is not merely *dicta*, as demonstrated by that Court's treatment of the issue. *See Or. Waste Sys.*, 511 U.S. at 114 (Rehnquist, C.J., dissenting) (noting the importance of footnote 6 in the Court's conclusion); *see also Commonwealth Edison*, 453 U.S. at 621 (describing the user-fees doctrine as applying to fees "imposed by the State for the use of *state-owned or state-provided* transportation or other facilities and services." (emphasis added)). Second, even if we were persuaded to follow VIZIO's line of reasoning, VIZIO has offered no reason why this definition of "user fee" is either unreasonable or in need of revision. Rather than offering an alternative, VIZIO merely states that we have the option to decline to follow footnote 6.

In sum, we do not see a justification—nor has VIZIO offered one—for why the *Evansville* test ought to be applied to a program such as Connecticut's. As a result, VIZIO has failed to state a claim for relief and the district court was correct to dismiss this "user fee" argument.

### IV. Burden on Interstate Commerce

Having dispensed with VIZIO's primary arguments as to the discriminatory nature of Connecticut's E-Waste Law, we now turn to the task of balancing the competing national and local interests. Because the law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. Ultimately, however, this final attempt to maintain VIZIO's dormant Commerce Clause challenge under the *Pike* framework must be stifled because VIZIO once again fails to plead sufficient facts to give rise to an entitlement to relief.

The *Pike* test is often directed at differentiating "protectionist measures" from those that "can fairly be viewed as . . . directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Philadelphia v. New Jersey*, 437 U.S. 617, 624, (1978). In order to sufficiently allege that Connecticut's E-Waste Law is "protectionist" rather than dedicated to "legitimate local concerns," VIZIO must at least demonstrate that the "burden on interstate commerce . . . is qualitatively or quantitatively different from that imposed on intrastate commerce." *Town of Southold*, 477 F.3d at 50 (quoting *Sorrell*, 272 F.3d at 109). What's more, when faced with the considerable public benefits presented by this law, VIZIO's task becomes even greater, as it "must overcome a 'strong presumption of validity.'" *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 670

(1981) (quoting *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524 (1959)).

While states are prohibited from discriminating against out-of-state actors, they "may impose incidental burdens on interstate commerce . . . to promote safety or general welfare." *N.Y. State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1307 (2d Cir. 1994). Here, we examine precisely that sort of law and conclude that "any arguable burden does not exceed the public benefits of the [law]." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346 (2007).

The benefits provided by Connecticut's E-Waste Law are legion. Primarily, the law funds the state's recycling efforts, a clear benefit to the public at large. Secondarily, the market share approach itself provides additional benefits in that it, among other things: apportions costs amongst state market participants, reduces the administrative strain other approaches may carry in identifying producers, and guarantees that any "orphan" products—those for which an original manufacturer is unidentifiable—will be recycled, *see* Conn. Gen. Stat. § 22a-631(d). Analyzed against this backdrop, VIZIO faces a high bar to sufficiently allege that Connecticut has impermissibly implemented a program which benefits public health and safety.[4]

On balance we do not find an impermissible burden. Burdens supportive of an unconstitutional finding have been recognized in the following situations: "regulations that have a disparate impact on in-versus out-of-state entities, laws that regulate beyond the state's

---

[4] VIZIO responds that, even if the E-Waste Law as a whole protects public health and safety, the method by which it does so—specifically its "reliance on national-market share—is entirely unrelated to any" such benefit. That is of no importance. We ask only whether the means chosen is "a convenient and effective way" of accomplishing the ends sought. *United Haulers Ass'n*, 550 U.S. at 346.

borders, and laws that create regulatory inconsistencies between states." *N.Y. Pet Welfare Ass'n*, 850 F.3d at 91.  VIZIO's *Pike* argument rests somewhat uncomfortably in those first and third categories.[5]

First addressing VIZIO's claims of disparate impact, VIZIO has not demonstrated that there are "burdens on interstate commerce that exceed the burdens on intrastate commerce."  *USA Recycling*, 66 F.3d at 1287 (quoting *Jorling*, 16 F.3d at 1308).  Nor has VIZIO alleged the actual—or potential—existence of any in-state manufacturer that is less negatively affected by the national market approach.

In any event, the law does not contain any uneven burden allocated on the basis of an actor's residency and, as such, we do not find a violation of the dormant Commerce Clause.  Connecticut considers a variety of factors when assigning manufacturers a market share, *see* Conn. Agencies Regs. § 22a-638-1(g)(2), none of which relates to residency.  In other words, Connecticut's E-Waste Law "treat[s] all private companies exactly the same," no matter from which state they hail.  *United Haulers Ass'n*, 550 U.S. at 342.  Short of finding that burdens are distributed unequally based on in-state versus out-of-state distinctions, we are unable to find an impermissible disparate impact.  *See C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390–92 (1994) (citing, *inter alia*, *Philadelphia*, 437 U.S. at 624; *Hughes*, 441 U.S. at 322)).

VIZIO does also claim that Connecticut's E-Waste Law double-charges recycling costs in different states, imposing fees in Connecticut for out-of-state sales in states where VIZIO has already contributed to recycling efforts. Inasmuch as that claim could be construed as a "regulatory inconsistency," it is not of the variety deemed unconstitutional under the *Pike* standard.  Whatever the ill

---

[5] Any argument by VIZIO that Connecticut regulates beyond its borders has been disposed of by way of our extraterritoriality analysis.  *See supra* Discussion Section II; *see also Sorrell*, 272 F.3d at 110 (analyzing one component of a plaintiff's *Pike* claim under the *Healy* rubric).

effects VIZIO claims result from Connecticut's E-Waste Law, those effects are only felt within the borders of that state. Regulatory inconsistencies arise not from a regulation that takes effect entirely inside a state's borders, but instead from those that "project[] one state regulatory regime into the jurisdiction of another State." *Healy*, 491 U.S. at 337 (citing *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 88–89 (1987)). Neither Connecticut's consideration of out-of-state sales as a basis for its e-waste fees nor any resultant allegedly "duplicative" charges in multiple states constitute a regulatory inconsistency. Rather, it is merely an inconvenience for VIZIO to pay a seemingly larger e-waste bill. Connecticut has done nothing to create—or increase the likelihood of—inconsistent obligations with which VIZIO must comply in different states. *See Brown-Forman Distillers*, 476 U.S. at 583–84. As a result, we do not find that any alleged double charge impermissibly burdens interstate commerce.

Ultimately, any arguable burden on interstate commerce is not clearly excessive in comparison to the local benefits. Thus, VIZIO cannot state a claim under *Pike*, 397 U.S. at 142, and VIZIO's complaint was properly dismissed.

## CONCLUSION

The viability of VIZIO's claim hinges on our recognizing a claim under the dormant Commerce Clause not acknowledged by any court. VIZIO has failed to convince us that its claim should proceed under a variety of theories, old and new. In sum, we: 1) decline to extend the extraterritoriality doctrine in such a way as to prohibit laws that merely consider out-of-state activity, 2) do not apply the user fee analysis to VIZIO's case, and 3) find no burden on interstate commerce that is clearly excessive to the considerable public benefits conferred by Connecticut's E-Waste Law. As a result, VIZIO's suit cannot proceed.

VIZIO has failed to plead a cognizable basis for invalidating Connecticut's E-Waste Law under the dormant Commerce Clause and, accordingly, we uphold the decision of the district court to dismiss VIZIO's complaint with prejudice.