# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3478
_____

Cardiovascular Systems, Inc.

*Plaintiff - Appellant*

v.

Cardio Flow, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 15, 2022
Filed: June 14, 2022
_____

Before ERICKSON, GRASZ, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Cardiovascular Systems, Inc. ("CSI") brought this action against Cardio Flow, Inc. ("Cardio Flow"), alleging the breach of a settlement agreement that resolved ownership of intellectual property rights related to atherectomy devices. Cardio Flow was not a named party to the settlement, however, and moved for summary judgment on that basis. In response, CSI asserted that principles of equitable

estoppel and agency bound Cardio Flow to abide by the agreement. The district court[1] rejected CSI's arguments and dismissed its claims. We affirm.

## I.	BACKGROUND

CSI and Cardio Flow are competitor firms in the medical device industry. CSI produces atherectomy devices, which remove built-up plaque from arteries. Cardio Flow is in the process of developing its FreedomFlow atherectomy device that is currently in clinical trials.

Dr. Leonid Shturman founded the medical device company that later evolved into CSI, where he became the chief executive officer. Several agreements required Dr. Shturman to assign the intellectual property rights from his inventions to CSI. During his employment, Dr. Shturman discovered a new technology for atherectomy devices called the "Counterweight Invention." It utilizes centrifugal forces to allow an atherectomy device to orbit inside an artery for improved abrasive effect.

The Counterweight Invention has been the focus of multiple lawsuits over the last 15 years. Not long after Dr. Shturman came up with the idea in 2002, he resigned from CSI and tried to patent the technology himself. Five years later, CSI sued him in federal district court and filed a parallel arbitration against his nascent company, Shturman Medical Systems, Inc. An arbitrator deemed CSI the rightful owner of the Counterweight Invention. Dr. Shturman settled the federal case and transferred his interest in the technology to CSI.

Despite the settlement, Dr. Shturman persisted in securing patents for orbital atherectomy devices. CSI again questioned his ownership, prompting Dr. Shturman to preemptively initiate a lawsuit in October 2009. But he died a month later, leaving

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

the new patents' ownership unresolved and whatever interest he had in them to his widow, Lela Nadirashvili.

Gary Petrucci—a CSI board member who managed the litigation against Dr. Shturman—contacted Nadirashvili shortly after her husband's death. She expressed dismay because she had "put all our money into [obtaining the new patents] and I'm broke." Petrucci responded, "Well, send me the patents. Let me take a look at it and maybe I can be of some help." Petrucci then introduced Nadirashvili to his personal intellectual property lawyers. Those same lawyers agreed to represent Nadirashvili *pro bono* in her effort to keep ownership of the patents. Petrucci resigned from CSI's board in March 2010 and founded Cardio Flow four months later. In his deposition, Petrucci testified that before starting Cardio Flow, he and Nadirashvili had discussed that she would receive 40 percent of the company's shares in exchange for the rights to her patents.

In 2012, Nadirashvili sued CSI in the District of Minnesota for a declaratory judgment that she owned the new patents. She maintained that they were not covered by the previous arbitration because they derived from fluid inflatable counterweights rather than the originally developed solid counterweights. The delineation between fluid and solid counterweights underlaid an August 2012 settlement agreement that instigates this dispute.

The settlement agreement separated the contested patents into the Nadirashvili Patent Portfolio and the CSI Patent Portfolio, each named for the respective assignee of the patent rights within them. Because the two portfolios had some overlap as to fluid and solid technologies, Section 3 of the settlement agreement set up inverse exclusive licenses. Nadirashvili conferred on CSI a "worldwide, royalty-free, paid-up, irrevocable exclusive right and license under the Nadirashvili Patent Portfolio to make, have made, use, offer to sell, sell and import rotational atherectomy devices or methods utilizing Solid Counterweights." In return, CSI granted Nadirashvili an identical license for "devices or methods utilizing Fluid Inflatable Counterweights."

Section 7 provided that Nadirashvili "may partner (which may include . . . the sale of the Nadirashvili Patent Portfolio to a person or entity) with any individual or entity to develop the Nadirashvili Patent Portfolio, including Gary Petrucci." And Section 10 prohibited assignment of the settlement agreement absent written consent of the other party—with a lone exception:

> [E]ither party may assign, without the consent of the other party, this Settlement Agreement and the rights, obligation and privileges herein in conjunction with a sale or transfer of the respective party's Patent Portfolio to a third party who has agreed, in writing promptly delivered to the other party, to be bound to this Agreement as if it were a party.

The order of dismissal specified that the district court would retain jurisdiction over the settlement agreement.

On November 16, 2012, Nadirashvili transferred her patent portfolio to Cardio Flow in exchange for shares and two monetary payments. She did not receive CSI's written consent before doing so. Cardio Flow never agreed in writing or otherwise to be bound by the settlement agreement. According to CSI, Cardio Flow eventually began developing its FreedomFlow device using solid counterweights, allegedly in violation of the exclusive right and license.

CSI commenced this action against Cardio Flow in Minnesota state court. The complaint as amended advanced claims for breach of contract, as well as declaratory and injunctive relief. Cardio Flow removed the case to federal court and successfully resisted a motion to remand. On cross-motions for summary judgment, the district court determined that Section 3 afforded CSI only "an exclusive license to certain patent rights under the Nadirashvili Patent Portfolio," not a broader exclusive right to practice solid counterweights generally. The district court then found that neither equitable estoppel nor agency theories supported binding Cardio Flow as a party to the settlement agreement and dismissed CSI's complaint.

-4-

## II.    DISCUSSION

CSI contends that the district court erred in deciding Cardio Flow was not a party to the settlement agreement by either equitable estoppel or an agency relationship.  CSI does not assert on appeal that it has the exclusive right to practice solid counterweights.  We review the district court's grant of summary judgment *de novo*, construing the evidence and all reasonable inferences for the nonmoving party.  Meyer v. McKenzie Elec. Coop., Inc., 947 F.3d 506, 508 (8th Cir. 2020).  Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### A.    Mootness

Before reaching the merits, we first address a challenge to our jurisdiction to decide this appeal.  Article III of the Constitution limits federal judicial power to the determination of "Cases" and "Controversies."  The necessity of an ongoing "dispute capable of judicial resolution," U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 403 (1980), must endure throughout "all stages of federal judicial proceedings, trial and appellate," Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  Cardio Flow asks us to dismiss this appeal as moot, arguing it would not impact the final result.  See, e.g., In re Gretter Autoland, Inc., 864 F.3d 888, 891 (8th Cir. 2017) ("If nothing of practical consequence turns on the outcome of an appeal, then the appeal is moot.").  We disagree.

Cardio Flow asserts that because CSI did not specifically appeal the dismissal of its requests for declaratory and injunctive relief and forfeited any right to damages below, the possibility of a remedy is foreclosed no matter what.  Yet the district court dismissed the injunction claim on the sole ground that CSI lacked a broad exclusive right to practice solid counterweights.  If we were to hold that a genuine fact dispute remains as to whether Cardio Flow became a party to the settlement agreement, CSI would be able to seek injunctive relief for the violation of its exclusive license to the solid counterweight technology in Nadirashvili's patent portfolio.  See U.S. Valves,

-5-

Inc. v. Dray, 212 F.3d 1368, 1376 (Fed. Cir. 2000), abrogated on other grounds by Gunn v. Minton, 568 U.S. 251 (2013).  Also, even if CSI surrendered actual damages in the district court (an issue we need not reach), the availability of nominal damages is enough to stave off mootness.  Uzuegbunam v. Preczewski, 592 U.S. ___, 141 S. Ct. 792, 802 (2021); see N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y., 590 U.S. ___, 140 S. Ct. 1525, 1536 (2020) (Alito, J., dissenting) (observing "it is widely recognized that a claim for nominal damages precludes mootness").  In Minnesota, "[a]bsent proof of actual loss . . . nominal damages are recoverable for breach of [a] contractual obligation."  George Benz & Sons v. Hassie, 293 N.W. 133, 138 (Minn. 1940).  While a direct prayer for nominal damages does not appear in CSI's amended complaint, its "averment of general damages is sufficient to state a claim for nominal damages."  Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co., 966 F.2d 847, 853 (4th Cir. 1992).  Mootness arises "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  Knox v. Serv. Emps. Int'l Union, Loc. 1000, 567 U.S. 298, 307 (2012) (citation and internal quotation marks omitted).  Since CSI may obtain injunctive relief or nominal damages, this case still presents a live controversy.[2]

## B.    Equitable Estoppel

CSI first argues that the record supports the application of equitable estoppel to bar Cardio Flow from denying it is bound by the settlement agreement.  Under

---

[2]We ordered supplemental briefing on several other jurisdictional questions. Upon review, we conclude the district court had ancillary jurisdiction over this case to enforce the settlement agreement.  See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994); Myers v. Richland Cnty., 429 F.3d 740, 747 (8th Cir. 2005).  Although removal was improper under Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 34 (2002), CSI waived that defect by failing to raise it within the first 30 days.  See 28 U.S.C. § 1447(c); Holbein v. TAW Enters., Inc., 983 F.3d 1049, 1059 (8th Cir. 2020) (en banc).  This purely state-law breach of contract action does not arise under federal patent law, thereby vesting appellate jurisdiction in this court.  See 28 U.S.C. § 1295(a)(1); Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC, 938 F.3d 1355, 1364-68 (Fed. Cir. 2019).

Minnesota law, a litigant's claim of equitable estoppel has three elements: (1) that promises or inducements were made; (2) that it reasonably relied on those promises; and (3) that it will suffer harm if estoppel is not applied. Heidbreder v. Carton, 645 N.W.2d 355, 371 (Minn. 2002).

"Representation or concealment of material facts is an indispensable element of equitable estoppel." W. H. Barber Co. v. McNamara-Vivant Contracting Co., 293 N.W.2d 351, 357 (Minn. 1979). CSI offers no evidence indicating that Cardio Flow, as opposed to Nadirashvili or Petrucci, represented or concealed a material fact and never argues differently on appeal. Instead, CSI suggests that equitable estoppel can apply without that requirement because Cardio Flow accepted the benefits from the settlement agreement—namely, Nadirashvili's patents—with prior knowledge of its terms. The Minnesota Supreme Court rebuffed a similar theory in Lunning v. Land O'Lakes, 303 N.W.2d 452, 457 (Minn. 1980), when a party cited previous cases to argue that "representation or concealment of a material fact is no longer an essential element of equitable estoppel." The state supreme court countered that "any doubts remaining as to [its] stance . . . were put to rest" by the clear holding in W. H. Barber. Id. at 458; see also Suske v. Straka, 39 N.W.2d 745, 751 (Minn. 1949) ("[O]ne who, either intentionally or through culpable negligence by silence . . . or by his acts and representations, induces another to believe that certain facts exist is estopped to deny the existence of such facts . . . ."). In this situation, "[o]ur duty is to conscientiously ascertain and apply state law, not to formulate new law based on our own notions of what is the better rule." Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 612 (8th Cir. 2009). We are not free under Minnesota law to excuse CSI's failure to establish that Cardio Flow represented or concealed material facts.

CSI's reliance on Karnitz v. Wells Fargo Bank, N.A., 572 F.3d 572 (8th Cir. 2009), misses the mark. That decision involved a claim to void a mortgage pursuant to Minnesota Statute § 507.02, which ordinarily "requires a mortgage on a married couple's homestead to be signed by both spouses." Id. at 574. We applied a line of Minnesota Supreme Court cases allowing equitable estoppel to override the statutory language if "(1) the nonsigning spouse consents to and has prior knowledge of the

-7-

transaction, (2) the nonsigning spouse retains the benefits of the transaction, and (3) the party seeking to invoke estoppel has sufficiently changed its position to invoke the equities of estoppel." Id. at 574-75 (citing Dvorak v. Maring, 285 N.W.2d 675, 677-78 (Minn. 1979); Seitz v. Sitze, 10 N.W.2d 426 (Minn. 1943); Fuller v. Johnson, 165 N.W. 874 (Minn. 1917)). But we were careful to acknowledge that "the doctrine of equitable estoppel generally involves some type of misrepresentation." Id. at 576. We then expressly stated that the "retention of the benefits" concept applied "in the specific context of the homestead signature requirement of § 507.02." Id. Given the Minnesota Supreme Court's unequivocal holdings elsewhere that a representation or concealment is essential, we decline to extend Karnitz to supplant the usual equitable estoppel elements. We likewise reject CSI's invitation to rely on decisions applying the law of states other than Minnesota. See LG & E Cap. Corp. v. Tenaska VI, L.P., 289 F.3d 1059, 1065 (8th Cir. 2002) (Nebraska law); Total Petroleum, Inc. v. Davis, 822 F.2d 734, 737-38 (8th Cir. 1987) (Missouri law). Equitable estoppel provides no basis to enforce the settlement agreement against Cardio Flow.

## C. Agency

CSI makes two arguments that Nadirashvili acted as Cardio Flow's agent, thus binding it as a principal, when she entered into the settlement agreement.[3] First, CSI asserts that Nadirashvili was participating in a joint venture with Petrucci. Second, CSI posits that Petrucci extensively controlled Nadirashvili's lawsuit, ending in the settlement agreement favoring Cardio Flow. Both contentions are unpersuasive.

A joint venture creates agency relationships among its participants. Duxbury v. Spex Feeds, Inc., 681 N.W.2d 380, 390 (Minn. Ct. App. 2004). An undertaking becomes a joint venture when four distinct elements are fulfilled: "(1) contribution— combining either money, property, time, or skill in a common undertaking; (2) joint

---

[3]CSI waived any challenge to the district court's conclusion that Nadirashvili lacked actual or apparent authority to contract on Cardio Flow's behalf by not raising the issue in its briefing. See Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008).

-8-

proprietorship and control—the parties having a proprietary interest and a right of control over the subject matter; (3) sharing of profits—but not necessarily of losses; and (4) contract—either express or implied." Krengel v. Midwest Automatic Photo, Inc., 203 N.W.2d 841, 847 (Minn. 1973).

CSI argues that Nadirashvili worked with Petrucci to negotiate the settlement agreement "for the benefit of their joint venture, Cardio Flow." The evidence belies that claim. "Each participant must have an equal right to direct and govern . . . every other participant with respect to the mutual undertaking." Delgado v. Lohmar, 289 N.W.2d 479, 482 (Minn. 1979). Though Nadirashvili received shares and payments for her patents, nothing illustrates that she possessed any right—much less an equal right—to control Cardio Flow's activities. Nadirashvili accepted a minority stake in Cardio Flow, and the record points to Petrucci alone managing its operations. More fundamentally, the existence of a joint venture "assum[es] that a corporation has not been organized" yet. Rehnberg v. Minn. Homes, Inc., 52 N.W.2d 454, 456 (Minn. 1952). Petrucci incorporated Cardio Flow before Nadirashvili signed the settlement agreement. A corporation may form a joint venture with other individuals or entities, Hansen v. St. Paul Metro Treatment Ctr., Inc., 609 N.W.2d 625, 629 (Minn. Ct. App. 2000), but normally cannot itself be the subject of such an endeavor. See Rehnberg, 52 N.W.2d at 456; 46 Am. Jur. 2d Joint Ventures § 9 (2022) (explaining "as a general proposition, the fact that an entity is a corporation precludes finding that it is a . . . joint venture").[4]

The assertion that Petrucci controlled Nadirashvili's lawsuit is equally without merit. CSI's argument relies on A. Gay Jenson Farms Co. v. Cargill, Inc., 309 N.W.2d 285 (Minn. 1981). There, the Minnesota Supreme Court held that a debtor grain elevator acted as an agent for its creditor in transactions with farmers. Id. at 293. Calling the relationship between the debtor and creditor "unique," id., the court identified nine factors that demonstrated extensive control, id. at 291. It additionally

---

[4]For the same reason, Cardio Flow cannot be a traditional partnership between Nadirashvili and Petrucci. See Minn. Stat. § 323A.0202(b) ("An association formed under a statute other than this chapter . . . is not a partnership under this chapter.").

referenced the agency principle that "[a] creditor who assumes control of his debtor's business may become liable as principal for the acts of the debtor in connection with the business." Id. (citing Restatement (Second) of Agency § 14O (Am. L. Inst. 1958)).

We later distinguished Jenson Farms. In New Millennium Consulting, Inc. v. United HealthCare Services, Inc., 695 F.3d 854, 859 (8th Cir. 2012), a company was alleged to be an agent under an extensive control theory based on another entity's authority to screen, assign, and supervise its employees. When affirming summary judgment, we explained that no agency relationship existed because the entity was not a creditor of the company and lacked control over its internal affairs. Id. at 860.

Here, the relationship between Petrucci and Nadirashvili is weaker than that in New Millennium and far afield from that in Jenson Farms. Petrucci did not lend money to Nadirashvili. She merely told him she was facing financial difficulties following her husband's death, resulting in his offer to examine the patents to see if "there was something to be done" with them. The record at most reveals that the lawyers whom Petrucci introduced Nadirashvili to kept him informed about important terms in the settlement agreement beforehand and gave him a copy after execution. Petrucci and the lawyers testified that he was not involved in legal strategy. There is no evidence that Petrucci directed or financed the litigation in a way that gives rise to an inference of pervasive control over Nadirashvili's affairs. No reasonable jury would find that Nadirashvili entered into the settlement agreement as an agent for Cardio Flow.

## III.   CONCLUSION

Neither equitable estoppel nor agency principles bound Cardio Flow as a party to the settlement agreement. We affirm the judgment of the district court.

_____