# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2936

———————————————

Thomas John Styczinski; Tom "The Coin Guy", LLC;
Treasure Island Coins, Inc.; Numismatist United Legal Defense

*Plaintiffs - Appellants*

v.

Grace Arnold, in her official capacity as Commissioner
of the Minnesota Department of Commerce

*Defendant - Appellee*

———————

Appeal from United States District Court
for the District of Minnesota

———————

Submitted: July 8, 2022
Filed: August 31, 2022

———————

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

———————

GRASZ, Circuit Judge.

Appellants (the "Bullion Traders") are a collection of in-state and out-of-state precious metal traders or representatives thereof challenging the constitutionality of Minnesota Statutes Chapter 80G, which regulates bullion transactions. The Bullion Traders argue the statute violates the dormant Commerce Clause. We agree.

## I. Background

The Bullion Traders sued the Minnesota Commissioner of Commerce (the "Commissioner") under 42 U.S.C. § 1983, seeking both declaratory and injunctive relief, claiming (among other things) that Chapter 80G is unconstitutional under the dormant Commerce Clause because it has an extraterritorial effect and excessively burdens interstate commerce. The Bullion Traders moved for summary judgment, and the Commissioner moved to dismiss. The district court partially granted and partially denied the Bullion Traders' motion for summary judgment and partially granted and partially denied the Commissioner's motion to dismiss. The district court concluded part of Chapter 80G violated the dormant Commerce Clause but held the remainder of Chapter 80G withstood the Bullion Traders' constitutional challenges. The district court determined the unconstitutional sections of Chapter 80G were severable from the valid provisions and thus upheld those valid provisions.

The Bullion Traders appeal, arguing the district court should have found the entirety of Chapter 80G unconstitutional. Particularly, the Bullion Traders argue Chapter 80G's registration scheme and surety bond requirement are extraterritorial and excessively burden interstate commerce and that those provisions are inseverable from the remainder of Chapter 80G.

After the parties briefed and argued this appeal, the Governor of Minnesota signed 2022 Minn. Sess. Law Serv. ch. 75 (H.F. 4030) into law, which took effect on August 1, 2022, and substantially amended Chapter 80G. We requested and received supplemental briefing from the parties regarding the impact of H.F. 4030 on this appeal. The Bullion Traders maintain their argument that Chapter 80G is extraterritorial and excessively burdens interstate commerce, and the Commissioner maintains her defense that Chapter 80G only regulates conduct connected to Minnesota and does not excessively burden interstate commerce.

Chapter 80G as amended by H.F. 4030 regulates "dealers" and their "Minnesota transactions." A "dealer" is "any person who buys, sells, solicits, or markets bullion products or investments in bullion products to consumers and conducts Minnesota transactions."[1] Minn. Stat. § 80G.01, subd. 3(a). A "Minnesota transaction" is a "bullion product transaction" made:

> (1) by a dealer that is incorporated, registered, domiciled, or otherwise located in Minnesota;
> (2) by a dealer representative at a location in Minnesota;
> (3) between a dealer and a consumer who lives in Minnesota; or
> (4) between a dealer and a Minnesota consumer when the transaction involves:
>> (i) delivering or shipping a bullion product to an address in Minnesota;
>> (ii) delivering to or shipping from a precious metal depository on behalf of a Minnesota resident; or
>> (iii) making payment to a consumer or receiving a payment from a consumer at an address in Minnesota, unless the transaction occurs when the consumer is at a business location outside of Minnesota.

*Id.* § 80G.01, subd. 5a.

"It is unlawful for a dealer or dealer representative to conduct a Minnesota transaction without being registered by the [C]ommissioner[.]" Minn. Stat. § 80G.02, subd. 1. A dealer must apply to register within forty-five days after conducting at least $25,000 in Minnesota transactions between July 1 and the following June 30 of any one-year period. *Id.* Dealers must annually renew their registration. *Id.* § 80G.02, subds. 1, 2. A dealer who conducts bullion transactions without being properly registered is guilty of a misdemeanor. *Id.* § 80G.08.

---

[1]The statute provides several exceptions to the definition not significant to this appeal. *See* Minn. Stat. § 80G.01, subd. 3(b).

A dealer must also maintain a surety bond. *Id.* § 80G.06, subd. 1. The amount of the surety bond required is based on the amount of Minnesota transactions the dealer conducted twelve months before registration or renewal. *Id.* The minimum amount of the surety bond is $25,000 and is triggered after a dealer conducts $25,000 worth of Minnesota transactions. *See id.* The statute also prohibits dealers from employing certain sales practices while conducting a Minnesota transaction. *See id.* § 80G.07.

The Commissioner has various civil enforcement powers under Chapter 80G. If the Commissioner determines a dealer has violated the statute, the Commissioner may institute a civil action; issue an order directing the dealer to comply with the statute; or issue an order denying, suspending, revoking, or conditioning the registration of the dealer. *Id.* § 80G.10, subds. 1, 4(a). If the Commissioner prevails in a civil action against a dealer, the court may issue several different forms of relief including a permanent injunction, an asset freeze, an order for the Commissioner to take charge of the dealer's property, or a civil penalty up to $10,000 for each violation. *Id.* § 80G.10, subd. 2.

The Bullion Dealers argue Chapter 80G as amended by H.F. 4030 suffers the same constitutional ill as its predecessor—it violates the dormant Commerce Clause. We agree Chapter 80G, even as amended, is unconstitutional.

## II. Analysis

The Bullion Traders appeal the district court's partial grant of the Commissioner's motion to dismiss and the district court's partial denial of the Bullion Traders' motion for summary judgment. We review both rulings de novo. *See Wheeler v. City of Searcy*, 14 F.4th 843, 851 (8th Cir. 2021) (summary

judgment); *Onyiah v. St. Cloud State Univ.*, 5 F.4th 926, 929 (8th Cir. 2021) (motion to dismiss).

## A. Jurisdiction

Before we address the merits of the Bullion Traders' appeal, we must ensure we have jurisdiction over this appeal. "We must consider our own jurisdiction 'even if the parties concede the issue,'" *United States v. O'Laughlin*, 31 F.4th 1042, 1043 (8th Cir. 2022) (quoting *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014)), as they do here.[2]

Article III of the Constitution limits our jurisdiction to "Cases" and "Controversies." *See* U.S. Const. art. III, § 2, cl. 1. This means that for jurisdiction to continue through an appeal, "an ongoing dispute capable of judicial resolution must endure throughout all stages of federal judicial proceedings, trial and appellate." *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 37 F.4th 1357, 1361 (8th Cir. 2022) (cleaned up). A question of whether a dispute is moot, depriving a court of jurisdiction, "is raised by the revision of [a law] that bec[omes] effective while the case [i]s pending in the Court of Appeals." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288 (1982). We therefore must determine whether H.F. 4030 has left this appeal without an "ongoing dispute capable of judicial resolution." *Cardiovascular Sys.*, 37 F.4th at 1361 (cleaned up).

The Supreme Court has previously dismissed appeals for mootness where, like here, "a challenged statute . . . is . . . significantly amended pending review, and the only relief sought is prospective[.]" *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 669 (1993) (O'Connor, J., dissenting); *see, e.g.*, *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (dismissing as moot a challenge to a university's regulations where "the

---

[2]The Commissioner argues some of the Bullion Traders' arguments are mooted by H.F. 4030, but she does not argue the appeal itself is moot.

University substantially amended [the] regulations"). The Court has indicated, however, that an amended statute does not render an appeal moot where the amended statute "is sufficiently similar" to the original statute so "that it is permissible to say that the challenged conduct continues." *Northeastern Fla.*, 508 U.S. at 662 n.3; *accord Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996).

Here, while some of the language in Chapter 80G on which the district court based its analysis was altered by H.F. 4030, the conduct which the Bullion Traders originally challenged continues. The Bullion Traders make the same general argument now as they did before H.F. 4030: Chapter 80G unconstitutionally prohibits dealers from engaging in transactions wholly outside of Minnesota without registering with the Commissioner and complying with Minnesota regulations. Thus, while H.F. 4030 changed much about Chapter 80G, it did not materially change the conduct about which the Bullion Traders complain. Accordingly, we conclude H.F. 4030 does not deprive us of jurisdiction to decide this appeal.

## B. Dormant Commerce Clause

The Commerce Clause grants Congress the power "[t]o regulate Commerce . . . among the several States[.]" U.S. Const. art. I, § 8, cl. 3. The Supreme Court has held the Commerce Clause gives Congress exclusive legislative jurisdiction over interstate commerce, meaning states may not enact laws that "unduly restrict interstate commerce." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019); *accord Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824). This restriction on the states is commonly referred to as the "dormant Commerce Clause." *Tenn. Wine & Spirits*, 139 S. Ct. at 2459.

A state statute violates the dormant Commerce Clause if it: (1) "clearly discriminates against interstate commerce in favor of in-state commerce," (2) "imposes a burden on interstate commerce that outweighs any benefits received," or

(3) "has the practical effect of extraterritorial control on interstate commerce."[3] *Grand River Enters. Six Nations, Ltd. v. Beebe*, 574 F.3d 929, 942 (8th Cir. 2009). The Bullion Traders assert the registration and surety bond provisions in Chapter 80G violate the dormant Commerce Clause in the latter two ways—by imposing an excessive burden on interstate commerce and by having the practical effect of extraterritorial control. We agree Chapter 80G unconstitutionally exerts extraterritorial control.

## 1. Extraterritoriality

"[T]he 'Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State[.]'" *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (ellipses in original) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982) (plurality opinion)). A statute directly controlling wholly out-of-state commerce "is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.* Specifically, "no State may force an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *Id.* at 337.

Chapter 80G's registration scheme does exactly what *Healy* forbids—it applies Minnesota law to commerce wholly outside of Minnesota. The statute prohibits "a dealer or dealer representative [from] conduct[ing] a Minnesota transaction without being registered by the [C]ommissioner[.]" Minn. Stat. § 80G.02, subd. 1. While on its face this provision does not appear to regulate out-of-state commerce, a closer look at the definition of "Minnesota transaction" reveals an extraterritorial effect. A Minnesota transaction includes a bullion product transaction conducted "between a dealer and a consumer who lives in Minnesota[.]"

---

[3]We do not address or opine on whether this case could also be analyzed under the equal sovereignty principle articulated in *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1497 (2019), *Shelby Cnty. v. Holder*, 570 U.S. 529, 544 (2013), and *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009).

*Id.* § 80G.01, subd. 5a(3). A "dealer" includes any person (with exceptions), including an out-of-state person, "who buys, sells, solicits, or markets bullion products or investments in bullion products to consumers and conducts Minnesota transactions." *Id.* § 80G.01, subd. 3(a). Thus, under a plain reading of the statutory scheme, a Minnesota transaction includes a transaction anywhere in the world between a bullion trader and a Minnesota resident. A bullion trader could therefore become subject to and violate Minnesota law without conducting a single transaction in Minnesota.

For example, Chapter 80G would require a Las Vegas bullion dealer to register with the Commissioner after making one $25,000 sale to a Minnesota resident *in Las Vegas*. *See* Minn. Stat. § 80G.01, subds. 3(a), 5a(1); *id.* § 80G.02, subd. 1. If that dealer fails to register with the Commissioner within forty-five days after that transaction, the dealer would be *prohibited* from making another bullion transaction with a Minnesota resident in Las Vegas. *See id.* § 80G.02, subd. 1. Thus, a dealer who has never set foot or conducted business in Minnesota could violate Chapter 80G by making a wholly out-of-state transaction without the Commissioner's approval. In other words, Chapter 80G would require "an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *Healy*, 491 U.S. at 337.

Chapter 80G's application to out-of-state dealers is not the only suspect operation of the chapter. Chapter 80G also earmarks Minnesota dealers—individual and corporate—and regulates them and their transactions wherever they might go. A "Minnesota transaction" includes a bullion product transaction conducted "by a dealer that is incorporated, registered, domiciled, or otherwise located in Minnesota." Minn. Stat. § 80G.01, subd. 5a(1). Thus, an in-state dealer conducting a bullion product transaction is always conducting a "Minnesota transaction," wherever the dealer might be.

The Commissioner argues that by domiciling in Minnesota, dealers inure the benefits of Minnesota law and thus subject themselves to Minnesota regulation. But

while Minnesota residents certainly subject themselves to certain obligations by residing in Minnesota, this does not give the State *carte blanche* to regulate all conduct of residents regardless of where it occurs.

We find persuasive our sister circuit's reasoning in *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010). In that case, an Indiana statute deemed title loan transactions to have occurred in Indiana—and thus be subject to Indiana's loan laws—if a resident of Indiana was part of the transaction and if the creditor had advertised or solicited business in Indiana, regardless of where the transaction took place. *Id.* at 662. The Seventh Circuit held the statute was extraterritorial, reasoning, "To allow Indiana to apply its law against title loans when its residents transact in a different state that has a different law would be arbitrarily to exalt the public policy of one state over that of another." *Id.* at 667–68. The same could be said here. To allow Minnesota to apply its bullion regulatory scheme to transactions its residents conduct wholly in South Dakota, South Carolina, or South Korea would be to "arbitrarily [] exalt the public policy" of Minnesota over those jurisdictions. *Id.*

The Commissioner asserts that Minnesota has an interest in regulating out-of-state transactions involving Minnesota residents to protect Minnesota consumers and to reduce litigation related to bullion transactions in Minnesota courts. But as the Seventh Circuit explained when rejecting similar arguments, a State's interest in a statute controlling out-of-state commerce—"however well intentioned and genuinely beneficial to the state imposing it"—does not save the extraterritorial statute. *Id.* at 666, 668.

The Commissioner also relies on caselaw from our circuit and our sister circuit in which the courts upheld laws that relied in part on out-of-state transactions to calculate in-state obligations. *See Grand River*, 574 F.3d at 933–34, 941–44; *VIZIO, Inc. v. Klee*, 886 F.3d 249, 255–57 (2d Cir. 2018). We agree that certain in-state obligations, such as a registration fee for traders doing business in Minnesota, even when calculated considering out-of-state transactions, do not control out-of-state commerce. *See generally Grand River*, 574 F.3d at 943–44; *VIZIO*, 886 F.3d at

255–57. However, Chapter 80G does not merely burden in-state dealers with a monetary obligation that considers both in-state and out-of-state transactions. Rather, it *prohibits* an in-state dealer who meets the $25,000 threshold from conducting *any* bullion transaction, including out-of-state transactions, without first registering with the Commissioner. *See* Minn. Stat. § 80G.02, subd. 1. While Minnesota certainly has an interest in requiring dealers to register before doing business in Minnesota, such interest does not allow Minnesota to pin its law onto its in-state dealers and their transactions wherever they travel. *See Midwest Title Loans*, 593 F.3d at 668. Such a scheme unconstitutionally controls wholly out-of-state commerce.

The surety bond requirement does not fare any better. The requirement that dealers maintain a surety bond is triggered by "Minnesota transactions," which, as discussed, includes bullion product transactions involving Minnesota residents regardless of where the transaction takes place. *See* Minn. Stat. §§ 80G.06 and 80G.01, subd. 5a. Thus, a person located in Las Vegas could become a "dealer" and subject to Minnesota's surety bond requirement by conducting one $25,000 transaction in Las Vegas with a Minnesota resident. *See id.* §§ 80G.06 and 80G.01, subds. 3(a), 5a. In that case, Chapter 80G's surety bond requirement could apply to a Nevadan—unbeknownst to him or her—who has never set foot in Minnesota nor conducted any business there. Minnesota "has no power to project its legislation into" other states in such a way.[4] *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935).

---

[4]Because we find Chapter 80G unconstitutional under the doctrine of extraterritoriality, it is unnecessary for us to determine whether Chapter 80G also imposes an undue burden on interstate commerce. *See generally Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

## III. Conclusion

For the reasons stated herein, we reverse the district court's partial grant of the Commissioner's motion to dismiss and the district court's partial denial of the Bullion Traders' motion for summary judgment. On remand, we leave to the district court to decide in the first instance whether the extraterritorial provisions of Chapter 80G, as amended, are severable from the remainder of the statute.

_____