# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1828

_____

Thomas John Styczinski; Tom "The Coin Guy", LLC; Treasure Island Coins, Inc.; Numismatist United Legal Defense

*Plaintiffs - Appellants*

v.

Grace Arnold, in her official capacity as Commissioner of the Minnesota Department of Commerce

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 18, 2025
Filed: June 24, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

In *Styczinski v. Arnold* (*Styczinski I*), 46 F.4th 907, 912–14 (8th Cir. 2022), we held that Minnesota Statutes Chapter 80G, which regulates bullion transactions, violated the dormant Commerce Clause based on its extraterritorial reach caused by the definition of a "Minnesota transaction." *See* Minn. Stat. § 80G.01, subd. 5a.

Following our remand for a severability analysis, the district court[1] concluded that striking portions of the "Minnesota transaction" definition cured the extraterritoriality concern. Plaintiffs-appellants, who are a collection of in-state and out-of-state precious metal traders and their representatives (the "Bullion Traders"), argue Chapter 80G as severed still applies extraterritorially and the district court erred in applying Minnesota severability law. We affirm.

## I. Background

As we explained in *Styczinski I*, 46 F.4th at 910–11, Chapter 80G regulates "dealers" and their "Minnesota transactions." A "dealer" is "any person who buys, sells, solicits, or markets bullion products or investments in bullion products to consumers and conducts Minnesota transactions."[2] Minn. Stat. § 80G.01, subd. 3(a). Any dealer or its representative is prohibited from engaging in certain conduct when making a "Minnesota transaction." *Id.* § 80G.07. A dealer who makes an aggregate of $25,000 or more of "Minnesota transactions" in a year must register with the Minnesota commissioner of commerce, *id.* § 80G.01, subd. 5, and *id.* § 80G.02, subd. 1, and a dealer must maintain a surety bond before conducting a "Minnesota transaction," *id.* § 80G.06. Conducting business without properly registering according to the statutory scheme is a misdemeanor. *Id.* § 80G.08. The commissioner may also exercise civil enforcement powers for violations of Chapter 80G, such as instituting a civil action, ordering the dealer to cease and desist, or revoking the dealer's registration. *Id.* § 80G.10, subds. 1, 4(a).

The Bullion Traders challenged Chapter 80G under the dormant Commerce Clause, a limitation on states unduly restricting interstate commerce as derived from Congress's constitutional power to regulate commerce among the states. *Styczinski*

---

[1]The Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota.

[2]The "dealer" definition includes several exceptions irrelevant to this appeal. *See* Minn. Stat. § 80G.01, subd. 3(b).

*I*, 46 F.4th at 911.  We agreed Chapter 80G "unconstitutionally controls wholly out-of-state commerce" based on our reading of the "Minnesota transaction" definition. *Id.* at 913–14.  Under the challenged statute, a "Minnesota transaction" is defined as any bullion product transaction made:

> (1) by a dealer that is incorporated, registered, domiciled, or otherwise located in Minnesota;
> (2) by a dealer representative at a location in Minnesota;
> (3) between a dealer and a consumer who lives in Minnesota; or
> (4) between a dealer and a Minnesota consumer when the transaction involves:
>> (i) delivering or shipping a bullion product to an address in Minnesota;
>> (ii) delivering to or shipping from a precious metal depository on behalf of a Minnesota resident; or
>> (iii) making payment to a consumer or receiving a payment from a consumer at an address in Minnesota, unless the transaction occurs when the consumer is at a business location outside of Minnesota.

Minn. Stat. § 80G.01, subd. 5a.  According to this definition, "a Minnesota transaction includes a transaction anywhere in the world between a bullion trader and a Minnesota resident." *Styczinski I*, 46 F.4th at 913.  Consequently, a bullion dealer could be subject to and violate Minnesota law without ever transacting in Minnesota.  *Id.*  Moreover, "an in-state dealer conducting a bullion product transaction is always conducting a 'Minnesota transaction,' wherever the dealer might be." *Id.*  When combined with the registration and surety bond requirements, this expansive definition meant "an in-state dealer who meets the $25,000 threshold" could not conduct "*any* bullion transaction, including out-of-state transactions, without first registering with the [c]ommissioner," and an out-of-state dealer who never conducted business in Minnesota but made a sale to a Minnesota resident while that resident was out-of-state would be required to obtain a surety bond.  *Id.* at 914–15.  We therefore concluded Chapter 80G violated the dormant Commerce Clause by regulating wholly out-of-state commerce and remanded the case to the district court "to decide in the first instance whether the extraterritorial provisions of Chapter 80G" could be "sever[ed] from the remainder of the statute." *Id.* at 915.

On remand, the district court determined the provisions could be severed because the extraterritoriality problem was solved by striking parts of the "Minnesota transaction" definition as follows:

> "Minnesota transaction" means a bullion product transaction conducted:
> (1) by a dealer that is ~~incorporated, registered, domiciled, or otherwise~~ located in Minnesota;
> (2) by a dealer representative at a location in Minnesota;
> (3) between a dealer and a consumer ~~who lives~~ in Minnesota; or
> (4) between a dealer and a Minnesota consumer when the transaction involves:
> > (i) delivering or shipping a bullion product to an address in Minnesota;
> > (ii) ~~delivering to or shipping from a precious metal depository on behalf of a Minnesota resident;~~ or
> > ~~(iii)~~ making payment to a consumer or receiving a payment from a consumer at an address in Minnesota, unless the transaction occurs when the consumer is ~~at a business location~~ outside of Minnesota.

The district court further concluded the severed statute complied with Minnesota severability law, which presumes a statute is severable unless one of two exceptions apply.[3] *See* Minn. Stat. § 645.20.

---

[3]Minnesota severability law permits courts to excise words and phrases from provisions of a statute, as the district court did here, rather than requiring the severance of an entire clause or section. *See, e.g.*, *In re A.J.B.*, 929 N.W.2d 840, 857–58, 862–63 (Minn. 2019) (curing unconstitutional overbreadth by striking "disturb" and "cause distress" from a statute prohibiting someone from repeatedly mailing something "with the intent to abuse, disturb, or cause distress"); *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 836–37 (Minn. 2002) (severing the words "the Minnesota charitable contribution deduction" from a statute defining taxable income to include certain itemized deductions but "excluding the Minnesota charitable contribution deduction and the medical expense deduction").

## II. Analysis

The Bullion Traders appeal, arguing the severed statute still operates extraterritorially and the district court erred in applying Minnesota severability law. We review both questions of law de novo. *See North Dakota v. Heydinger*, 825 F.3d 912, 919 (8th Cir. 2016); *Kinley Corp. v. Iowa Utils. Bd.*, 999 F.2d 354, 359 (8th Cir. 1993). Having conducted that review, we affirm.

### A. Continued Extraterritoriality

The Bullion Traders raise three main arguments to support their contention the statute as severed by the district court does not cure the constitutional deficiencies this court found in the prior appeal. First, they claim *Styczinski I* held that Chapter 80G's registration and surety bond provisions operate extraterritorially, so any severance that does not fully remove those sections is insufficient to rectify the harm found by this court. This misconstrues our decision. While we found these provisions unconstitutionally controlled wholly out-of-state commerce, we did so by looking at the definition of a "Minnesota transaction." *See Styczinski I*, 46 F.4th at 913–15. We explained that both requirements incorporated, and were triggered by, a "Minnesota transaction," and that definition is what gave these provisions an extraterritorial reach. *Id.* Nothing in our earlier opinion required severing the registration and surety bond provisions if the "Minnesota transaction" definition that caused the extraterritoriality could be constrained.

Next, the Bullion Traders argue the "Minnesota transaction" definition still includes all bullion transactions by "a dealer that is located in Minnesota," so the registration and surety bond provisions continue to operate extraterritorially by applying to a Minnesota dealer wherever it conducts business. We decline to address this argument on appeal because the Bullion Traders waived it before the district court. *See Watkins v. Lawrence County*, 102 F.4th 933, 942 (8th Cir. 2024). When a party intentionally relinquishes or abandons its claim, the claim is waived and therefore unreviewable on appeal. *United States v. Booker*, 576 F.3d 506, 511 (8th

Cir. 2009). Here, at a hearing on severability, the district court asked if striking the language of the "Minnesota transaction" definition as proposed by the Commissioner and ultimately adopted by the district court would resolve the extraterritoriality concerns. The Bullion Traders agreed the edit "gets rid of the extraterritoriality," except for a separate concern about registration requirements for dealer representatives. The district court then confirmed: "So changing 'Minnesota transaction' the way that the Commissioner suggests in its supplemental memorandum, from your standpoint, gets rid of the extraterritoriality that made it unconstitutional in the first place." The Bullion Traders again agreed that it did except for the dealer representative issue. By twice agreeing the proposed definition resolved the statute's extraterritorial reach besides the dealer representative issue, the Bullion Traders approved of the definition (except as it related to the registration requirement for dealer representatives) and waived their other challenges to it. *See id.* at 510–11.

Finally, the Bullion Traders raise their dealer representative argument in this appeal, claiming Chapter 80G's registration requirement continues to operate extraterritorially even if the "Minnesota transaction" definition is altered because it regulates a dealer's representative without the qualifying term of a "Minnesota transaction." The section at issue reads:

> It is unlawful for a dealer or dealer representative to conduct a Minnesota transaction without being registered by the commissioner as provided for in this chapter. A dealer must submit an application to register itself and each of its dealer representatives within 45 days of reaching $25,000 in the aggregate of Minnesota transactions between July 1 and June 30 of any year, as determined by the transactions' sale or purchase prices. Once a dealer is required to register itself and its dealer representatives, the dealer must thereafter renew its registration and the registration of each of its dealer representatives in accordance with this chapter unless the person ceases to be a dealer. A dealer representative may not buy, sell, solicit, or market bullion products or investments in bullion products on behalf of a dealer unless the dealer is properly registered with the commissioner under this section.

Minn. Stat. § 80G.02, subd. 1. The Bullion Traders note that while a dealer is limited to those who "conduct[] Minnesota transactions," a dealer representative is "any natural person acting as an employee, contractor, or agent of a dealer and who has interactions with consumers for the purpose of the buying, selling, solicitation, or marketing of bullion products or investments in bullion products." *Id.* § 80G.01, subds. 3, 4. Thus, the Bullion Traders argue, a dealer who conducts $25,000 worth of Minnesota transactions is required to register all its employees involved in bullion transactions, regardless of whether those employees actually conduct Minnesota transactions. Moreover, they contend the final sentence prohibits such representatives from conducting any transactions anywhere unless the dealer is registered in Minnesota.

Reviewing this provision in light of the statute as severed, we conclude this provision does not unconstitutionally control wholly out-of-state commerce. The obligation to register is tied to conducting a "Minnesota transaction." *See id.* § 80G.02, subd. 1. Under the severed definition, a bullion transaction is only a "Minnesota transaction" when (1) the dealer or its representative conducting the sale is in Minnesota; (2) a dealer conducts the transaction with a consumer in Minnesota; or (3) a dealer conducts the transaction with a consumer who is a Minnesota resident and (a) the product is delivered or shipped to a Minnesota address, or (b) payment is made to or from a Minnesota address, except if the transaction occurs when the consumer is outside of Minnesota. In other words, "Minnesota transactions" now are limited to transactions conducted with at least one party in Minnesota. As a result, the registration requirement, which solely applies to "Minnesota transactions," prohibits dealers and their representatives only in Minnesota from conducting business after 45 days of reaching the $25,000 threshold without registering. *See id.* This registration requirement no longer blocks a dealer's or its representative's wholly out-of-state transactions, so they can continue to conduct such non-Minnesota transactions without first registering, even after reaching the threshold. *Cf. Styczinski I*, 46 F.4th at 914. Requiring a dealer to register all its representatives before the dealer or its representatives conduct a "Minnesota

-7-

transaction" is a permissible cost of transacting in Minnesota, not an extraterritorial regulation. *See id.* ("[I]n-state obligations, such as a registration fee for traders doing business in Minnesota, even when calculated considering out-of-state transactions, do not control out-of-state commerce.").

As for the final sentence of the portion of the registration section at issue, we reject the Bullion Traders' reading that it blocks representatives from conducting transactions anywhere. That sentence reads: "A dealer representative may not buy, sell, solicit, or market bullion products or investments in bullion products on behalf of a dealer unless the dealer is properly registered with the commissioner under this section." Minn. Stat. § 80G.02, subd. 1. We agree the provision on dealer representatives does not textually contain a territorial limitation. However, we must read the provision consistent with Minnesota law. Minnesota law presumes its statutes do not apply extraterritorially. *See In re Minn. Power's Petition for Approval of the EnergyForward Res. Package*, 958 N.W.2d 339, 349 (Minn. 2021) (citing Minn. Stat. § 1.01). Under this presumption, even if a statute does not "expressly exclude out-of-state" conduct, the Minnesota Supreme Court would not read it to include extraterritorial actions absent indication to the contrary. *See id.* To be sure, the original "Minnesota transaction" definition signaled the inclusion of certain out-of-state transactions, but as the Bullion Traders note, this restriction prohibiting a dealer representative from buying, selling, soliciting, or marketing bullion products does not include that definition. *See* Minn. Stat. § 80G.02, subd. 1. As explained above, whether a dealer is "properly registered" implies the transaction is in Minnesota because the registration requirement now only applies to such transactions. *See id.* We see no sign that the provision reaches conduct wholly outside of Minnesota. *See id.* As a result, Minnesota's presumption against extraterritoriality dictates that the last sentence prohibits the dealer representative from buying, selling, soliciting, or marketing in Minnesota if the dealer is not registered, while the representative remains free to conduct such activities outside of Minnesota. *See In re Minn. Power*, 958 N.W.2d at 349.

In sum, we find no basis to reverse the district court's conclusion that severing the "Minnesota transaction" definition removes the unconstitutionally extraterritorial reach from Chapter 80G.

## B. Minnesota Severability Law

The Bullion Traders also argue the district court erred by determining that the definition was severable. Severability is a question of state law. *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996). Our task is to predict how the Minnesota Supreme Court would rule if confronted with this issue. *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012). Minnesota law presumes a statute is severable

> unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or . . . the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Minn. Stat. § 645.20. Minnesota courts "retain as much of the original statute as possible while striking the portions that render the statute unconstitutional." *State v. Melchert-Dinkel*, 844 N.W.2d 13, 24 (Minn. 2014). The district court concluded neither statutory exception to severance applied and therefore portions of the "Minnesota transaction" definition could be stricken. The Bullion Traders contend that both statutory exceptions to severance apply. We agree with the district court.

The Bullion Traders assert the district court erred by looking to the codified statute when deciding whether "the valid provisions of the law" could be severed in accordance with legislative intent. *See* Minn. Stat. § 645.20. Specifically, they contend the word "law" in Section 645.20 as applied here "means the 2022 session law amendment passed by the state legislature and signed by the Governor, not the laws later codified by the Revisor of Statutes pursuant to Minnesota Statutes § 3C.06." The Bullion Traders did not raise this argument below. We therefore

decline to address this argument raised for the first time on appeal.[4] *See Henning v. Mainstreet Bank*, 538 F.3d 975, 979 (8th Cir. 2008).

Next, the Bullion Traders argue that, once Chapter 80G is severed, it is incomplete and incapable of being executed in accordance with legislative intent. They do not address the statute as severed by the district court, which leaves intact most of the statutory scheme. Instead, they again claim that *Styczinski I* invalidated the substantive requirements of Chapter 80G, such as the surety bond and registration requirements, and therefore must be wholly stricken from the statute to cure the extraterritoriality. But, as already explained, *Styczinski I* did not hold that any particular requirement of Chapter 80G was inherently extraterritorial, rather that Chapter 80G became so in conjunction with the "Minnesota transaction" definition. *See Styczinski I*, 46 F.4th at 913–15. Thus, we consider whether the statute is incomplete and incapable of execution based on the statute as severed by the district court. It is not. A statute is complete and capable of being executed when the remaining language is "neither dependent on nor incomplete without the [severed] terms" and "a substantial part of the original statute remains." *Melchert-Dinkel*, 844 N.W.2d at 24. By merely replacing the original definition of "Minnesota transaction" with the version narrowed by the district court, the statutory scheme as severed retains a clear meaning of the key term "Minnesota transaction." This severed definition is not dependent on removed language and can be applied in the various substantive proscriptions throughout Chapter 80G, just as the original definition would have been.

---

[4]Even on appeal, the Bullion Traders fail to provide any example of when the Minnesota Supreme Court, or any other court applying Minnesota law, has followed this approach when deciding whether a statute can be severed. And at least one Minnesota Supreme Court decision appears to reject their argument. *See Chapman*, 651 N.W.2d at 837–38 (considering multiple iterations of the challenged statute based on different amendments, rather than an isolated session law, to determine legislative intent regarding severability).

Finally, the Bullion Traders claim the extraterritorial reach of the "Minnesota transaction" definition is so essentially and inseparably connected with the rest of Chapter 80G that it is inseverable. In considering whether this exception to severability applies, we ask whether "the Legislature would have enacted a statute" that prohibited only in-state bullion transactions without registration or a surety bond "if it had recognized the constitutional flaws inherent in the broader language it enacted." *See In re A.J.B.*, 929 N.W.2d 840, 863 (Minn. 2019). We conclude the legislature would have enacted the statute as severed. Trimming the definition to cover only in-state transactions does not fundamentally frustrate the statutory scheme. Each part of the definition is written in the disjunctive, so a transaction can be a "Minnesota transaction" if only one part applies. *See* Minn. Stat. § 80G.01, subd. 5a. A disjunctive list is strong evidence that the legislature intended each portion to stand on its own to be sufficient even if another was removed. *See In re A.J.B.*, 929 N.W.2d at 863 (concluding provisions contained in a disjunctive list were not so essentially and inseparably connected with each other).

Moreover, the amendment history of Chapter 80G demonstrates the legislature's preference for a statute covering only in-state commerce rather than no regulation. After the district court initially held portions of Chapter 80G violated the dormant Commerce Clause, including that the statute regulated wholly out-of-state commerce by regulating a dealer everywhere it conducts business, the Minnesota legislature enacted 2022 Minn. Sess. Law Serv. ch. 75 (H.F. 4030) to amend Chapter 80G to address the deficiencies found by the district court. The amendment limited the conduct of dealers regulated by Chapter 80G to "Minnesota transactions," in other words, only transactions involving Minnesota businesses or Minnesota consumers. *See* H.F. 4030 §§ 1–3, 5, 8–10. Despite these changes, we concluded the amendment failed to fix the extraterritoriality concerns, given the scope of the "Minnesota transaction" definition itself. *See Styczinski I*, 46 F.4th at 913–15.

The Bullion Traders argue the continued inclusion of extraterritorial applications in the amendments indicates the legislature intended for extraterritorial

applications so we cannot sustain any regulation that does not apply to wholly out-of-state transactions. Their "analysis, if carried out in every case, would operate to defeat every claim of severability." *See Leavitt*, 518 U.S. at 143. Certainly, the legislature intended to have a statute that covered all the conduct included in the text it enacted. But that intent will inevitably be frustrated because "an invalidation" of the originally enacted statute "occurs *whether or not* the [unconstitutional] provisions are severed." *See id.* We therefore do not ask what statute the legislature originally wanted and then strike down the entire statute if it is not identical in its severed form. We instead consider, if the legislature could keep only the severed statute, would it prefer retaining the statute or removing it altogether. *See Melchert-Dinkel*, 844 N.W.2d at 24 (asking "what the Legislature would have wanted if it had known the other portions were unconstitutional"). Here, once the district court held Chapter 80G violated the dormant Commerce Clause, the legislature did not seek to get rid of the entire bullion regulation but instead tried to narrow it to Minnesota. While not fully successful, the effort to make the legislation Minnesota-specific indicates the legislature would have chosen the severed statute rather than the Bullion Traders' proposal of eliminating Chapter 80G entirely.

In sum, we agree with the district court that neither exception to severability applies, so the extraterritorial scope of the "Minnesota transaction" definition can be severed from the remainder of Minnesota Statutes Chapter 80G. *See* Minn. Stat. § 645.20.

### III. Conclusion

We affirm the judgment of the district court.

_____